**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOSE URI PEREZ FERNANDEZ**, an individual, on behalf of himself and all others similarly situated,<br><br>**Plaintiff**,<br><br>v.<br><br>**MUNICIPAL CREDIT UNION**,<br><br>**Defendant**. | Case No.:<br><br>**COMPLAINT - CLASS ACTION** |

Plaintiff Jose Uri Perez Fernandez ("Plaintiff" or "Plaintiff Perez"), individually and on behalf of all others similarly situated, makes the following allegations, based on information and belief, against Defendant Municipal Credit Union ("Defendant" or "MCU"):

**INTRODUCTION**

1. Defendant MCU follows a policy of denying full access to financial products to applicants who are not United States citizens or Lawful Permanent Residents ("LPRs"), including those who are holders of Deferred Action for Childhood Arrivals ("DACA").

2. Plaintiff Perez and members of the Class he seeks to represent are unable to access certain MCU loan products because of their alienage. Plaintiff Perez and members of the Class he seeks to represent were denied or offered loan products on different terms than other applicants solely based on their citizenship and immigration status.

3. Plaintiff brings this case against MCU for unlawful discrimination on the basis of alienage in violation of the Civil Rights Act of 1866, as codified at 42 U.S.C. § 1981 ("Section 1981"), and for unlawful discrimination on the basis of citizenship or immigration status in

1

violation of the New York State Human Rights Law ("NYSHRL"), as codified at N.Y. Exec. Law §§ 290, *et seq*.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over Plaintiff's Section 1981 claims under 28 U.S.C. § 1331.

5.  This Court has supplemental jurisdiction over Plaintiff's NYSHRL claims under 28 U.S.C. § 1367. The NYSHRL provides for a private right of action. *See* N.Y. Exec. Law. § 297 (9).

6.  This Court may issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

7.  Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because MCU is headquartered in New York, NY.

## PARTIES

**Plaintiff**

8.  Plaintiff Jose Uri Perez Fernandez resides in Brooklyn, New York. He arrived in the United States from Mexico when he was fifteen years old. He works as a network engineer for a national sports organization. Plaintiff Perez has been a DACA recipient since 2014. As a DACA recipient, Plaintiff Perez received authorization to work in the United States and a Social Security Number.

9.  Plaintiff Perez resided in Brooklyn, New York on the date he applied for a loan with Defendant and was unlawfully denied.

10. Plaintiff and members of the Class he seeks to represent were subjected to the violations described in this Complaint.

**Defendant**

11. Defendant Municipal Credit Union (MCU) is a state-chartered credit union headquartered in New York, New York.

12. Defendant maintains a principal office at 22 Cortlandt Street, 26th Floor, New York, NY 10007.

13. Defendant offers a range of financial and credit products, including savings and checking accounts, as well as auto, personal, home, and property loans. Membership in MCU, and these services, are available to those who reside, work, worship, or attend school in New York City; to certain other employees; and to immediate family of existing MCU members.

## STATEMENT OF FACTS

14. Plaintiff Perez brings this action on behalf of himself and the members of the proposed Plaintiff Class. The Class seeks damages, penalties, declaratory and injunctive relief.

15. Plaintiff Perez has been a recipient of DACA since 2014. In that time, he has continuously possessed an employment authorization card and a Social Security Number. As a DACA recipient, Plaintiff Perez can renew his work authorization.

16. In 2023, Plaintiff Perez decided to buy a car for the first time. He visited MCU's Brooklyn location on July 17, 2023, after he saw its offer of auto loans with an interest rate of 5.750%. At the time, he possessed a 750 credit score.

17. At the Brooklyn location, an employee of MCU told Plaintiff Perez that he needed to be an MCU member to apply for a loan. During the conversation, Plaintiff Perez presented his state-issued driver's license to the employee, which said "Limited-Term." Plaintiff was then asked to sign a membership agreement and open a "Hero Savings Account." After completing these steps, Plaintiff was allowed to apply for an auto loan.

18. On July 17, 2023, Plaintiff Perez received an email from Defendant entitled "Your Auto Loan Application Has Been Approved." The email stated that Defendant approved Plaintiff for an auto loan worth $30,000 with an annual interest rate of 5.750%. The offered loan term was for five years (60 months), and the approval was purportedly valid until August 16, 2023.

19. On August 14, 2023, Plaintiff Perez returned to Defendant's Brooklyn location to ask how to ensure the MCU loan applied to the car he had selected. When he arrived and presented his driver's license, an employee of Defendant credit union told Plaintiff Perez that MCU could no longer honor the terms of the July 17th approval because his driver's license said "Limited-Term." The employee told Plaintiff that the revocation of the loan offer was consistent with MCU guidelines.

20. Plaintiff Perez explained to the employee that he was a DACA recipient. In response, Defendant's employee stated that DACA recipients can only apply for a two-year loan under MCU guidelines. The MCU employee further stated that the two-year loan could be extended to five-years if Plaintiff became a permanent resident. At this point, Plaintiff showed the employee his Employment Authorization Document.

21. On August 16, 2023, at 10:13 AM, Plaintiff Perez received an email from Kimberly Sivers, an MCU Member Service Representative, confirming that Steven Cook, an employee of Defendant, had referred Plaintiff's application to MCU management. The email said that MCU management confirmed that MCU could only offer Plaintiff a two-year loan "based on" his "id and status." The email also stated that "once you get your permanent status card we can extend" the loan "to the term in which we agreed upon prior (60 months)."

4

22. On August 16, 2023, at or around 2:05 PM, Plaintiff Perez received a Notice of Adverse Action via email from MCU. The email stated that MCU was unable to approve Plaintiff's loan request due to "[t]emporary residence" as well as "[e]xcessive obligations in relation to income" and "[t]emporary or irregular employment."

23. Perez was qualified for an auto loan when MCU denied his application. Upon information and belief, after denying Perez's application, MCU continued to issue auto loans to U.S. citizens and LPRs who were as credit-worthy as Perez.

24. Plaintiff Perez suffered harm from MCU's denial of his auto loan application and the offer of a shorter, two-year loan on the basis of his alienage, citizenship or immigration status.

25. Plaintiff also suffered harm from Defendant's use and making of records that directly or indirectly express a limitation, specification, or discrimination as to citizenship or immigration status, including, without limitation, Defendant's Notice of Adverse Action, the emails exchanged between Plaintiff and Defendant's employees, as well as Defendant's discriminatory lending policy.

26. These acts caused Plaintiff to feel the deleterious effects of discrimination and to suffer harm, including actual damages; emotional distress that resulted in several months of sleeplessness, fatigue, anxiety, and migraine headaches; and other negative effects.

27. MCU's denial of Plaintiff Perez's application because of its limited and arbitrary alienage requirement violates 42 U.S.C. § 1981.

28. MCU's denial of Plaintiff Perez's application because of its limited and arbitrary citizenship and immigration requirement violates Section 296-a of the NYSHRL.

29. MCU's guidance used in consideration of Plaintiff's loan application, the emails that pertain to Plaintiff's loan application, and the Adverse Action Notice, which all express a limitation, specification, or discrimination as to citizenship or immigration status, violate Section 296-a of the NYSHRL.

30. MCU's offer of an inferior loan because of Plaintiff Perez's citizenship and immigration status violates Section 296-a of the NYSHRL.

31. There is an actual and substantial controversy between Plaintiff Perez and MCU.

## CLASS ACTION ALLEGATIONS

32. Plaintiff Perez incorporates by reference the allegations raised in all preceding paragraphs.

33. Plaintiff Perez brings this action on behalf of himself and all others similarly situated under Rule 23 of the Federal Rules of Civil Procedure.

34. Plaintiff Perez seeks to represent the following class, composed of, and defined as follows:

> All persons who resided in the United States at the relevant time they applied or attempted to apply for a loan product from MCU, but who were denied fair and equal consideration by MCU on the basis of alienage, citizenship, and/or immigration status.

35. Plaintiff Perez may amend the above class definition as this Court may permit or require.

36. This action has been brought and may be properly maintained as a class action because all class-treatment prerequisites are met under Rule 23 of the Federal Rules of Civil Procedure.

**Rule 23(a)(1) – Numerosity**

37. The potential members of the Class as defined are so numerous that joinder would be impracticable. Upon information and belief, the class is well in excess of 40 persons.

38. With discovery, the actual size of the Class will be better ascertained. The names and addresses of many potential Class Members are available to Defendant.

39. Notice can be provided to the potential Class Members via first class mail, using techinques and a form of notice similar to those customarily used in class-action lawsuits, as well as through published notice for those members whose addresses are unknown to Defendant.

**Rule 23(a)(2) – Common Questions of Law and Fact**

40. There are questions of law and fact common to the Class that predominate over any questions affecting only Plaintiff or any other individual Class Members. These common questions of law and fact include, without limitation:

   a. Whether it is Defendant's policy or practice to reject applicants for full consideration for financial products on the basis of alienage, citizenship, or immigration status;

   b. Whether Defendant violated 42 U.S.C. § 1981 by denying the full and equal right to contract to Plaintiff and the Class Members on the basis of alienage;

   c. Whether Defendant violated Section 296-a of the NYSHRL by denying Plaintiff and the Class Members credit on the basis of citizenship and immigration status;

   d. Whether it is Defendant's policy or practice to use or make records, such as guidelines, Adverse Action Notices, or other communications that directly or indirectly express a limitation, specification, or discrimination as to citizenship or immigration status;

   e. Whether Defendant violated Section 296-a of the NYSHRL by using or making records in the course of considering Plaintiff's and the Class Members' applications for loan

products that directly or indirectly express a limitation, specification, or discrimination as to citizenship or immigration status;

  f. Whether it is Defendant's policy or practice to impose special conditions or requirements on loans offered to applicants who are neither U.S. Citizens nor LPRs, where similar requirements or conditions are not imposed upon other applicants of like credit worthiness;

  g. Whether Defendant violated Section 296-a of the NYSHRL by imposing special conditions or requirements on loans offered to Plaintiff and Class Members based on their citizenship or immigration status;

  h. Whether Plaintiff and the Class Members are entitled to declaratory, injunctive, and other equitable relief; and

  i. Whether Plaintiff and the Class Members are entitled to damages and any other available relief.

  j. Whether Defendant shall be required to pay civil fines or penalties for proven violations of the NYSHRL, and in what amount.

**Rule 23(a)(3) – Typicality**

  41. The claims of the named Plaintiff are typical of the claims of the Class. Plaintiff and all Class Members sustained injuries and damages arising out of and caused by Defendant's common course of conduct and common policies in violation of federal and state laws and statutes as alleged here.

  42. Plaintiff's claims are representative and co-extensive with the claims of Class Members.

**Rule 23(a)(4) – Adequacy of Representation**

43. Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff is a member of the Class, does not have any conflicts of interest with other Class Members, and will prosecute the case vigorously on behalf of Class Members.

44. Plaintiff has retained counsel competent and experienced in complex litigation and discrimination class actions.

**Rule 23(b)(2) – Declaratory, Equitable, and Injunctive Relief**

45. Under Rule 23(b)(2), class certification is appropriate because MCU has acted and/or refused to act on grounds generally applicable to the Class Members. MCU's actions make appropriate declaratory, equitable, and injunctive relief with respect to Plaintiff and the Class Members as a whole.

46. MCU excludes Class Members outright from certain loan products on the basis of alienage, citizenship, and immigration status. MCU uses and makes records that express limitation, specification, or discrimination based on citizenship and immigration status. MCU imposes special conditions or requirements on loans offered to Class Members based on their citizenship or immigration status. The Class Members are entitled to declaratory, equitable, and injunctive relief to end MCU's common, unfair, and discriminatory policies and practices.

**Rule 23(b)(3) – Superiority of Class Action**

47. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class Members. Each Class Member has been injured and is entitled to recovery by reason of Defendant's unlawful policies and practices of discriminating on the basis of alienage,

citizenship, and immigration status and denying full and equal access to Defendant's loan products.

48. No other litigation concerning this controversy has been commenced by or against Class Members.

49. Class action treatment will allow similarly-situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. It is unlikely that Class Members have any interest in individually controlling separate actions in this case.

50. Under the NYSHRL, Class Members have been injured and are entitled to damages, and an assessment of statutory civil fines and penalties paid to the state of New York. Damages are capable of measurement on a class-wide basis. Plaintiff and Class Members will rely on common evidence to resolve their legal and factual questions, including the applicable policies and practices during the relevant period.

51. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action. The benefits of maintaining this action on a class basis far outweigh any administrative burden in managing the class action. Conducting the case as a class action would be far less burdensome than prosecuting numerous individual actions.

**FIRST CLAIM FOR RELIEF**
**Alienage Discrimination**
**(42 U.S.C. § 1981)**

52. Plaintiff Perez incorporates by reference all the allegations raised in all the preceding paragraphs.

53. Plaintiff Perez brings this claim on his own behalf and on behalf of the Class.

54.     Plaintiff Perez and Class Members are persons within the jurisdiction of the United States.

55.     Plaintiff Perez and Class Members are non-U.S. citizens.

56.     Plaintiff and Class Members have the right to make and enforce contracts in the United States and are entitled to the full and equal benefits of the law.

57.     Defendant conducts business in the United States and is obligated to comply with the provisions of 42 U.S.C. § 1981.

58.     Defendant intentionally discriminated against Plaintiff Perez and Class Members on the basis of their alienage by denying them the opportunity to receive full consideration for the credit union's loan products.

59.     Defendant intentionally discriminated against Plaintiff Perez and Class Members by interfering with their right to make and enforce contracts for loan products on the basis of their alienage.

60.     Plaintiff Perez and Class Members have no plain, adequate, or complete remedy at law to redress the wrongs alleged here.  Plaintiff Perez and Class Members demand damages, and request that the Court issue a permanent injunction ordering Defendant to alter its policies and practices to prevent future discrimination on the basis of an applicant's alienage and to prevent further violations of 42 U.S.C. § 1981.

61.     Plaintiff Perez and Class Members are now suffering, and will continue to suffer, irreparable injury from MCU's discriminatory acts and omissions.

**SECOND CLAIM FOR RELIEF**
**Violation of New York State Human Rights Law**
**(N.Y. Exec. Law §§ 290, *et seq.*)**

62. Plaintiff incorporates by reference all the allegations raised in all the preceding paragraphs.

63. Plaintiff Perez brings this claim on his own behalf and on behalf of the Class.

64. Plaintiff Perez and Class Members are persons subject to the jurisdiction of the State of New York.

65. Plaintiff Perez and Class Members are non-U.S. citizens.

66. Plaintiff and Class Members are entitled to fair and equal consideration for loan products.

67. Defendant is a creditor that conducts business in the State of New York and is obligated to comply with the provisions of the NYSHRL, N.Y. Exec. Law §§ 290 *et seq.*

68. No creditor may discriminate in the granting, withholding, extending or renewing, or in the fixing of the rates, terms or conditions of, any form of credit, on the basis of citizenship or immigration status. N.Y. Exec. Law § 296-a(1)(b).

69. Defendant intentionally discriminated against Plaintiff Perez and Class Members on the basis of their citizenship or immigration status, and thus violated N.Y. Exec. Law § 296-a(1)(b), by denying them the opportunity to receive full consideration for the credit union's loan products.

70. No creditor, on the basis of an applicant's or class of applicants' citizenship or immigration status, may deny credit to an applicant or class of applicants in circumstances where other applicants of like overall credit worthiness are granted credit. N.Y. Exec. Law § 296-a(2)(i).

71. Defendant intentionally discriminated against Plaintiff Perez and Class Members on the basis of their citizenship or immigration status, and thus violated N.Y. Exec. Law § 296-

a(2)(i), by denying their loan applications in circumstances where applicants of similar credit worthiness are granted loans.

72. No creditor, on the basis of an applicant's or class of applicants' citizenship or immigration status, may impose special conditions upon an applicant for class of applicants in circumstances where similar requirements or conditions are not imposed upon other applicants of like overall credit worthiness.  N.Y. Exec. Law § 296-a(2)(ii).

73. Defendant intentionally discriminated against Plaintiff Perez and Class Members on the basis of their citizenship or immigration status, and thus violated N.Y. Exec. Law § 296-a(2)(ii), by imposing special requirements and conditions upon them, including requiring them to obtain LPR status to become eligible for certain loan products and refusing to offer loan products that extend beyond the duration of their renewable immigration status, where similar requirements or conditions are not imposed upon other applicants of like overall credit worthiness.

74. No creditor may use or make any record or inquiry which expresses, directly or indirectly, any limitation, specification, or discrimination as to citizenship or immigration status. N.Y. Exec. Law § 296-a(1)(c).

75. Defendant intentionally discriminated against Plaintiff Perez and Class Members on the basis of their citizenship or immigration status, and thus violated N.Y. Exec. Law § 296-a(1)(c), by using and making records or inquiries which express, directly or indirectly, a limitation, specification, or discrimination as to citizenship or immigration status.  Such records include but are not limited to written records that capture MCU's lending policies and practices with respect to non-U.S. Citizens and non-LPRs, Adverse Action Notices that list temporary residence as a rationale for denial of a loan application, and emails that explain that non-U.S.

citizens and non-LPRs are not eligible for loans of the same duration as the loans that U.S. citizens and LPRs may receive.

76. Under Section 297 of the NYSHRL, Plaintiff and Class Members are entitled to compensatory damages and for assessment of civil fines and penalties up to $50,000 for each violation of the NYSHRL.

77. Under Section 297 of the NYSHRL, Plaintiff requests that this Court issue a permanent injunction ordering Defendant to alter its policies and practices to prevent future discrimination on the basis of an applicant's citizenship or immigration status and to prevent further violations of the NYSHRL.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Perez and the Class he seeks to represent request the following relief:

i. Certification of the case as a class action on behalf of the proposed Class Members;

ii. Designation of Plaintiff Perez as class representative on behalf of the Class;

iii. Designation of Plaintiff's counsel of record as Class Counsel;

iv. Declaratory judgment that Defendant's policies and practices complained of here are unlawful and violate 42 U.S.C. § 1981 and the NYSHRL;

v. Preliminary and permanent injunction against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies and practices complained of here and described in the preceding paragraphs;

vi. Award of compensatory damages to Plaintiff Perez and Class Members in an amount to be determined;

vii. Award of civil fines and penalties for each violation of the NYSHRL in an amount to be determined at trial, up to $50,000 per violation;

viii. Costs incurred, including reasonable attorneys' fees and costs to the extent allowable by law;

ix. Pre-judgment and post-judgment interest, as provided by law; and

x. For such other and further relief as the Court deems just and proper.

Dated: August 22, 2025

                                        Respectfully submitted,

/s/ Nicolas C. Shump
Nicolas C. Shump

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**

Andrea E. Senteno
Nicolas C. Shump
Sebastian T. Alarcon*^
1016 16th Street NW, Suite 100
Washington, DC 20036
(202) 293-2828
asenteno@maldef.org
nshump@maldef.org
salarcon@maldef.org

*Motion for pro hac vice forthcoming*
*^ Admitted in California only*

***Attorneys for Plaintiff and the Proposed Class***

15